ETHEL CARPENTER v. WILLIAM S. LOZIER, INC., and W. S. BRODERICK and D. G. GORDON, a Partnership, d/b/a JOINT ENTERPRISE, Employer, and EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY, Insurer, Appellants.—No. 39053.—184 S. W. (2d) 999.

Division Two, January 2, 1945.

Rehearing Denied, February 5, 1945.

*Leo T. Schwartz* for appellants; *Thomas E. Hudson* and *R. S. Mc-Kenzie* of counsel.

866

*Borders, Reinhardt, Margolin & Wimmell* for respondent.

WESTHUES, C.—This case originated with the Workmen's Compensation Commission. The Commission denied compensation on the theory that it did not have jurisdiction. On appeal to the circuit court the award of no compensation was set aside and the defendant appealed to this court.

The claimant, Ethel Carpenter, asked for compensation because of the death of her husband, Reese W. Carpenter, who was killed while at work for the defendants at the Sunflower Ordnance Plant, near Eudora, Kansas. The amount involved vests this court with appellate jurisdiction. The defendants are: William S. Lozier, Inc.; W. S. Broderick and D. G. Gordon, a partnership, employer, and Employers Mutual Liability Insurance Company, insurer. The accident causing Carpenter's death occurred July 24, 1942, in the state of Kansas. The Compensation Commission held it was without jurisdiction because the contract of employment was also made in Kansas. See sec. 3700, R. S. Mo., 1939, Mo. R. S. A. The circuit court in its judgment ruled, ". . . that, as a matter of law, the contract of employment, under undisputed facts, was made in Missouri." The employers in this case contracted to construct an ordnance plant for the United States Government near Eudora, Kansas. Before construction was commenced representatives of the employers met with representatives of certain union labor organizations in Kansas City, Missouri. It was agreed that only union men were to be employed. Working conditions, working hours per day and the rate of pay were also agreed upon. It was further agreed that when the employers were in need of men they would send a requisition for workers for the various crafts, stating the hour the men were to report for work, to the United States Employment Office in Kansas City, Missouri. This office in turn would convey the information contained in the requisition to the proper local union or its business agent. The local would secure

the necessary number and kind of workers desired. These men were then provided with cards or slips showing name, address, social security number etc., which they would take to the United States Employment Office in Kansas City, Missouri, where a form was filled out with certain information and also with the information which appeared on the slip furnished by the union. The men would then take the form given them by the United States Employment Service to the personnel office of the employer at the Sunflower Plant in Kansas. At that office there was a complete check as to the information contained on the form and a comparison of this information with the requisition issued by the employer. The applicants were required to sign an affidavit at the personnel office that they did not belong to any organization advocating the overthrow of our form of government; that they were citizens of the United States and that all answers to questions on the form furnished by the employment service had been truthfully answered. Anyone refusing to sign the affidavit was rejected. A witness for claimant, named Eslinger, a representative of a union, testified that the employer had the right to reject a man who was physically handicapped or who refused to sign the affidavit. It was also shown that anyone who had previously worked at the plant and had been discharged would be rejected at the plant on second application for work. Mr. Yandell of the United States Employment Office testified that on a number of occasions men were rejected by the defendants for that reason. On the question of whether defendants had the right to reject workers sent to the plant by the unions, pursuant to a requisition, Eslinger testified as follows:

"Q. Now, as a matter of fact, whether the employer did or did not, he had a right to reject an employee for various reasons, did he not? A. No, unless he had an awful good reason. . . .

"Q. After the man got out there in the personnel office, and it was determined that man for some reason or other could not fill the position, for some physical handicap, they had the right to reject that employee, did they not? A. They had the right, but there never was one done.

"Q. If the man refused to sign this affidavit that he was a citizen of the United States, they could refuse him employment? A. Correct.

"Mr. Schwartz: That is all."

Mr. Tuttle, in charge of the personnel at the plant, was a witness for the defendants. He testified that a number of men were rejected who had been sent by the union through the United States Employment Service. On this point Mr. Yandell testified that after a man reported at the plant for work it was up to the employer to decide whether to hire that particular man. Carpenter was sent to the plant and employed in the regular course as agreed upon by the union and the defendants. Later while at work he met with an accident resulting in death.

We are of the opinion that the weight of the evidence sustains a finding that the arrangement between the union and the defendants was in substance as follows: The defendants agreed to hire only union men on the construction job. These men were to be furnished by the union locals at Kansas City, Missouri, and were to clear through the United States Employment Service in Kansas City, Missouri. The defendants had the right to hire or reject the men when they appeared at the plant. That rejections were few is beside the point. The controlling factor is that defendants had the right to hire or reject. A very recent case decided by division one of this court seems to us to be controlling. It is the case of Deister v. Thompson, 352 Mo. 871, 180 S. W. (2d) 15, cited by claimant as supporting her theory. The controlling facts of the two cases are very similar. The court in the Deister case held that the evidence showed the contract of employment was a Kansas contract and the Missouri Compensation Commission did not have jurisdiction of the case. The Commission in that case, as in this case, had so ruled. The court in the course of the opinion quoted and approved the following taken from the cases indicated in the quotation:

" 'The place of contracting was the place where the minds of the parties met, and in determining the place where the minds of the parties met, all of the facts and circumstances and the conduct of the parties must be taken into consideration.' Kelsall v. Riss & Co., Mo. App., 165 S. W. 2d 329, lot. cit. 332, and cases there cited. 'It is settled law that the place where the final act occurs which makes a binding contract is the place of contract.' Daggett et al. v. Kansas City Structural Steel Co. et al., 334 Mo. 207, 65 S. W. 2d 1036, loc. cit. 1039.''

In Adams v. Continental Life Ins. Co., 340 Mo. 417, 101 S. W. (2d) 75, l. c. 82 (5), this court held:

''The burden was on claimant to establish that at the time of the accident resulting in the death of her husband he was in the course or scope of his employment under a contract made in Missouri.''

In that case, as in this, the accident did not occur in Missouri. The claimant in the case before us failed to prove that the contract was a Missouri contract. At least the Commission found against her on that issue and as indicated above we are of the opinion that the preponderance of the evidence sustains that finding.

Claimant contends that the finding of the Commission that the contract of employment was made in Kansas is not binding upon the courts because the question is one of law and not of fact. Cases are cited in support of this point, one being the case of Vaseleou v. St. Louis Realty & Securities Co., 344 Mo. 1121, 130 S. W. (2d) 538, l. c. 539 (1). The court there ruled:

''On a given state of facts, it is a question of law whether the relation of master and servant exists. This is so whether the facts are

"disputed or not. If the evidence is conflicting, then the facts that are found to be true by the triers of the facts must, as a matter of law, sustain the relation of employer and employee.''

The court found that the evidence was ample to support the finding of the Compensation Commission establishing the relation and affirmed the award. We do not see how that and similar cases can help the claimant in this case. It seems to us to sustain the ruling we have made and since the evidence is ample to sustain the finding of the Compensation Commission, that the contract was consummated in Kansas, we are not authorized to disturb that finding.

It follows that the judgment of the circuit court must be reversed with directions to that court to reinstate the award of the Commission. It is so ordered. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.