**NATIONAL OUTDOOR ADVERTISING COMPANY, a corporation, Plaintiff in Error,**

v.

**A. E. KALKHURST, Defendant in Error.**

**No. 40408.**

Supreme Court of Oklahoma.

May 3, 1966.

Rehearing Denied June 21, 1966.

Application for Leave to File Second Petition for Rehearing Denied Oct. 18, 1966.

James D. Fellers, Theodore M. Elam, Oklahoma City, for plaintiff in error, Mosteller, Fellers, Andrews, Snider & Baggett, Oklahoma City, of counsel.

R. D. Looney, Looney, Watts, Looney, Nichols & Johnson, Oklahoma City, for defendant in error.

**PER CURIAM:**

This action was commenced by the filing of a petition in the District Court of Oklahoma County by one A. E. Kalkhurst, defendant in error, hereinafter called plaintiff, against National Outdoor Advertising Company, a corporation, hereinafter called defendant. Plaintiff alleged in his petition that for several years prior to February 1, 1955 he had been employed by a corporation called Western Good Roads Service Company, which shall be hereafter referred to as Western. Plaintiff further alleged that on said date of February 1, 1955 Western orally agreed to place him on retirement and to pay him $200.00 per month for the remainder of his life. Plaintiff also alleged that the consideration supporting the oral agreement was his promise to turn over to Western his list of contacts and prospects, and in addition he agreed to make himself available to counsel with Western when needed. It was the position also of the plaintiff that this oral agreement was reduced to writing in the form of corporation minutes. He alleged full performance upon his part, but that Western paid him for only a few months and then refused to make any further payments. His action was to recover for these back payments and to compel, by a decree in specific performance, the defendant, as successor to Western, to pay to him the said $200.00 per month for the remainder of plaintiff's life.

It has been stipulated that the defendant assumed all of the obligations of Western, and that if the latter would have been liable to plaintiff that the defendant would be also. The defendant's answer in the form of a general denial and the plaintiff's reply thereto formed the issues upon which trial was had before the court, a jury being waived. At the conclusion of the trial, the trial court entered judgment for the plaintiff for $10,700.00, which was the sum of the back payments then due and directed that the defendant pay Mr. Kalkhurst the sum of $200.00 per month for the rest of his life. After the trial court's order overruling the defendant's motion for new trial, the latter appealed such judgment to this court.

One of the contentions of the defendant is that the trial court erred in overruling the demurrer and motion for judgment interposed by defendant at the close of the plaintiff's evidence, or, to put it another way, that plaintiff's evidence failed

to establish the essential elements of a contract between the parties. After careful analysis of the record in this matter and considering the applicable law of Oklahoma, both statutory and decisional, we are of the opinion that defendant's contention is a valid one and must be sustained.

We shall consider in our discussion only that evidence most favorable to the plaintiff.

Plaintiff, who was eighty-three at the time of trial, testified to the effect that he was employed by Western in 1942 doing public relations work and selling outdoor advertising on a commission basis; that he was employed on a month-to-month basis; that he could have quit work at any time and Western could have fired him at any time. He further testified that when he came to work one morning a letter was on his desk, signed by an officer of the company, advising him that he was being put on retirement at $200.00 per month. The following resolution, adopted by the board of directors of Western, was introduced in evidence:

"Resolved, that L. E. Landsen, as President of this corporation, be and he is hereby authorized and directed to place Mr. A. E. Kalkhurst on retirement pay of $200.00 per month beginning February 1, 1955."

Plaintiff further testified that there had been no conversation about his retirement prior to the time he found the letter on his desk; that after he received the letter he conversed with some of the company officials and was informed that the retirement was for life. During this same conversation, he testified, he told the company representatives that if they needed him to consult with them to call him any time. Plaintiff further testified that he left his list of contacts, lists of customers and other material relating to the company's business in his desk when he left. It is significant that the plaintiff had no choice in the matter of his retirement, nor in fixing the amount of monthly "retirement" he was to receive, and that all of the "promises" which he

contends were a sufficient consideration to bind the defendant to pay him the $200.00 for the remainder of his life were made *after* he had been notified he was being retired and that he would be paid $200.00 per month.

Plaintiff testified further that he was called thereafter several times by the company people, and he consulted with them. He also testified that some of the company's customers wanted to go elsewhere, but he persuaded them to stay with Western and the defendant.

Plaintiff's evidence further revealed that the company paid him $200.00 per month for six months, then reduced it to $100.00, which was paid for six months; then he received a check with a letter indicating it was the last check he would receive. This check was received in September, 1956.

Plaintiff's testimony showed that when a Mr. Gene Byrd, who was deceased by the time of trial, acquired ownership of controlling stock in Western in about February, 1957, that Mr. Byrd called the plaintiff and told him "I have just closed a deal; * * when can you come up and advise me and go back on the old plan? * * * I am putting you on the old basis." Mr. Byrd told Mr. Kalkhurst that as long as he, Byrd was in business the plaintiff would draw the $200.00 per month retirement pay. Thereafter Mr. Kalkhurst resumed advising and consulting with the company. He would go to the office two or three days a week and was paid something each month for automobile expense. He was also furnished with a membership in the Oklahoma Club for the purpose of entertaining customers. When the present owner of defendant bought control of the company from Mr. Byrd the plaintiff was handed a check and advised: "You are terminated now; here is your last check." Thereafter the plaintiff had no further dealings with the defendant.

The only other witness, beside plaintiff, testifying on behalf of the plaintiff was a Mr. Martin, a former accountant and then comptroller of Western. This witness tes-

tified that a company official of Western told him in 1955 to start paying plaintiff a retirement check of $200.00 per month. Witness testified that he was not advised how long the payments were to continue; that after the payments to plaintiff ceased, Mr. Byrd bought the company and the witness was instructed to resume the $200.00 monthly payments to Mr. Kalkhurst, and that these payments were still being made to the plaintiff when this witness left the company. This witness further testified that none of the officials of Western, or of the defendant, ever told him that the plaintiff was to receive the $200.00 per month for life, or that the plaintiff had agreed to do anything to receive the retirement pay.

This then was the sum and substance of the plaintiff's evidence which plaintiff asserts established that prior to February 1, 1955 an oral contract was entered into, which contract was later reduced to writing in the form of corporate minutes, and that under this agreement Western agreed to pay plaintiff $200.00 per month retirement pay for life commencing on the above date.

As heretofore stated, we are unable to agree with the position of plaintiff.

15 O.S. 1961 Sec. 1 provides that:

"A contract is an agreement to do or not to do a certain thing."

And 15 O.S. 1961 Sec. 2 provides that:

"It is essential to the existence of a contract that there should be:

"1. Parties capable of contracting.

"2. Their consent.

"3. A lawful object; and

"4. Sufficient cause or consideration."

It is an elementary rule of law in this jurisdiction that in order to constitute a contract there must be an offer on the part of one and an acceptance on the part of the other. Hartzell v. Choctaw Lumber Co. of Delaware et al., 163 Okl. 240, 22 P.2d 387; Georgia State Savings Ass'n of Savannah, Ga. v. Elias, 192 Okl. 227, 135 P.2d 36; Sims v. United Bridge and Iron et al., Okl., 402 P.2d 911.

Assuming, without deciding, that, at the time of the contract alleged by the plaintiff, both parties were capable of contracting, and that the object of the alleged contract was lawful, and that the plaintiff's alleged agreement to turn over certain records and to make himself available for advice and consultation whenever called for by the corporation would be sufficient cause or consideration for the alleged agreement by the corporation to pay the plaintiff $200.00 per month for the rest of his life or so long as the plaintiff consulted with and advised the corporation, the plaintiff's evidence failed to establish that either party made any such offer. Without such an offer by one party, and the acceptance thereof by the other party, the consent of the parties essential to the existence of the alleged contract was lacking, and, insofar as the Landsen regime is concerned, no such contract ever came into existence.

The same thing can be said of the plaintiff's evidence concerning his conversations with Mr. Byrd and the occurrences at and after the time that Mr. Byrd acquired the controlling stock of the corporation and became its president. Although the plaintiff testified that Mr. Byrd asked him when he could come up and go back on the old plan, the old basis, and told him that he was retired on $200.00 a month and that as long as he, Byrd, was in business, the plaintiff was on retirement pay, and plaintiff's witness, Martin, testified that before gaining control of the corporation Mr. Byrd said in a conversation with the witness and the plaintiff that he was depending upon the plaintiff for advice in securing former accounts and bringing them back into the fold, and that he would see that the plaintiff was taken care of, the plaintiff's evidence failed to establish that any offer to pay the plaintiff $200.00 per month the rest of his life was made by the corporation during the Byrd regime. Of course, there was no ratification of such a contract during the Byrd regime, for, as we have seen, there was no contract to ratify.

We conclude that the trial court erred in overruling the defendant's demurrer to the plaintiff's evidence, made in the form of a motion for judgment for the defendant at the close of the plaintiff's case.

The above makes it unnecessary for us to pass upon the question of lack of consideration or any of the other contentions made by the plaintiff in error.

Judgment reversed, and cause remanded to the trial court with directions to render and enter judgment for the defendant.

HALLEY, C. J., JACKSON, V. C. J., and DAVISON, WILLIAMS, BLACK-BIRD, IRWIN, BERRY and LAVENDER, JJ., concur.

The Court acknowledges the aid of Supernumary Judge WEBB in the preparation of this opinion. After a tentative opinion was written, the cause was assigned to a Justice of this Court. Thereafter, upon due consideration in conference, the foregoing opinion was adopted by the Court.