**Garland CHAPMAN, Petitioner,**

v.

**UNION EQUITY COOPERATIVE EXCHANGE, a Corporation, Farmers Elevator Mutual Insurance Co., its Insurance Carrier, Woodrow Wallace, and the State Industrial Court of the State of Oklahoma, Respondents.**

**No. 42819.**

Supreme Court of Oklahoma.

Feb. 25, 1969.

**4**

Ben N. Hatcher, Oklahoma City, for petitioner.

Ray Teague, Oklahoma City, for respondents, Union Equity Cooperative Exchange and Farmers Elevator Mutual Ins. Co.; Cheek, Cheek & Cheek, Oklahoma City, of counsel.

Pierce, Duncan, Couch & Hendrickson, by Tom D. Capshaw, Oklahoma City, for respondent Woodrow Wallace.

G. T. Blankenship, Atty. Gen., for respondent.

LAVENDER, Justice.

This is an original proceeding in this court to review an order of the State In-

dustrial Court en banc, which in turn affirmed an order of the trial judge of said court, which denied an award of compensation benefits to petitioner. The question decisive of the matter is whether claimant's contract of employment was consummated in Oklahoma or in Texas—the residence state of claimant's employer, Wallace, and the state where the accident occurred. A somewhat incidental question is presented also, the same being whether respondent Union Equity Cooperative Exchange and its insurance carrier should have been held liable to claimant in a secondary capacity— that is, secondarily to the liability of respondent Wallace. A finding that the employment contract was consummated ·outside Oklahoma will render unnecessary this court's determination of the matter involving primary and secondary liability to claimant for benefits for it will then follow that the State Industrial Court of Oklahoma was correct when it held it did not have jurisdiction of the claim.

85 O.S.1961, § 4 provides, in the first paragraph thereof (which was added by amendment of 85 O.S.1951, § 4 in 1955):

"From and after the passage and effective date of this Act, all the provisions of the Workmen's Compensation Law of this State (Title 85 O.S.1951) and all amendments thereof or thereto shall apply to employers and to employees, irrespective of where accident resulting in injury may occur, whether within or without the territorial limits of the State of Oklahoma, *when the contract of employment was entered into within the State of Oklahoma,* and the said employee was acting in the course of such employment and performing work outside the territorial limits of this State under direction of such employer. In such case the inured employee may elect to commence and maintain his action for benefits and compensation before the State Industrial Commission [now State Industrial Court], and the said Commission [now Court] is hereby vested with jurisdiction thereof as fully as if such injury or accident had occurred within this State. * * *" (Emphasis supplied)

Prior to that amendment, the State Industrial Commission had no jurisdiction of a claim for workmen's compensation where the injury occurred outside the State of Oklahoma. Phillips v. H. A. Marr Grocery Company et al. (1956), Okl., 295 P.2d 765. Under 85 O.S.1961, § 4, the State Industrial Commission (now the State Industrial Court) of this state has no jurisdiction of a claim for compensation in connection wtih injuries sustained by a workman outside the territorial limits of this state unless his contract of employment was entered into within this state. Scotty's Flying & Dusting Service, Inc. v. Neeser et al. (1964), Okl., 393 P.2d 842, 847. And, the general rule is that a contract is deemed to have been made where the final assent is given. Armstrong, Administratrix v. Guy H. James Construction Company et al. (1965), Okl., 402 P.2d 275.

None of the parties against whom the claimant asserted his claim for compensation would concede that his contract of employment was entered into within the State of Oklahoma. The trial court found there existed an employer-employee relationship between the claimant and respondent Wallace as of the date of the accident and such finding is not challenged in this court.

The question of where claimant's contract of employment was entered into, insofar as resort must be made to conflicting evidence to resolve such question, is a question of fact. In such an instance if there is competent evidence reasonably tending to support the Industrial Court's finding, an order based thereon will not be disturbed on review by this court. C. & .H. Transportation Company, Inc. et al. v. Berkley et al. (1959), Okl., 341 P.2d 249; Groendyke Transport, Inc. et al. v. Gardner, Administratrix, et al. (1960), Okl., 353 P.2d 695. Also, see Armstrong, Administratrix, v. Guy H. James Construction Company et al., supra.

Viewing all of the claimant's own testimony in the light most favorable to him, it

appears that, some two to three weeks prior to the accident involved herein, the claimant, who then was unemployed and was living at Hydro, Oklahoma, talked in Hydro to an old friend of his, named Barber, who, at that time, also lived at Hydro and had been driving one of Wallace's trucks for some time, about Barber's work and pay and about the claimant getting a job driving one of Wallace's trucks, and was told by Barber that he would see what he could do about it and would let the claimant know later; that four or five days before the accident involved herein, Barber came to the claimant's home in Hydro, in one of Wallace's trucks, told him that he had a job and asked him if he could be ready in about an hour to go with Barber to Sunset, Texas, to see Wallace; that Barber picked him up about an hour later and, on the way to Sunset but while they were still in Oklahoma, Barber told the claimant about what his work would be, and how it would be handled, and how and when he would be paid (an amount equal to twenty per cent of Wallace's transportation charges on each load driven by him, payable once a week); that they arrived in Sunset, Texas, after dark that same day and, after Barber called Wallace from a service station in Sunset, drove to Wallace's home; that that was the first time he had had any contact with Wallace; that Wallace came out of the house and handed him the keys to a truck, said there was a jack in the truck, told him to pick up the truck at a service station in Sunset and have it filled up with gas, and get a load of wheat at Calumet, Oklahoma; that he said nothing to Wallace, and Wallace said nothing to him, about his employment, his work, or his pay; and that, so far as he knew, Barber had no authority to hire any truck drivers for Wallace. Claimant also testified that he picked up the truck, had it filled with gas, picked up a load of wheat at Calumet, Oklahoma, took it to Houston, Texas, returned to Hydro, picked up a load of wheat near there, started to Houston, Texas, with that load, and had the collision on that, his second, trip.

Wallace testified that he was the owner of the truck that the claimant was driving when he was injured in the collision in Texas; that all of the men who drive his trucks are on the same basis—they keep their trucks in shape (but Wallace pays the truck expenses), are on their own insofar as getting loads is concerned, turn their load tickets in to him once a week, and he pays them twenty per cent of the transportation charges as indicated by their trip tickets; that Barber was one of his drivers; that he never did authorize Barber to employ the claimant or any one else on his behalf; that, about a week or so before Barber brought the claimant to his home, Barber had told him about a good man that needed a job and he told Barber that he would try him a week or ten days to see how he turned out; that his wife was having a party when Barber brought the claimant to his home, he went outside, and Barber said, "I brought this boy down here," and "he's a good man, good truck driver," and he (Wallace) said, "well, I will try him on a trial run or two and see if he does all right," and "if he does, why, we will let him work;" and that he gave the truck keys to one of them. (The claimant says Wallace gave the keys to him.)

■ Claimant contends that his contract of employment with Wallace was completed in Oklahoma, because he was advised of all of the terms of such employment by Barber while the both of them were still in Oklahoma. In this connection claimant contends that the only purpose in going to see Wallace in Sunset, Texas, was to pick up a truck and trailer. The State Industrial Court apparently concluded, however, that the purpose in Barber taking the claimant to Sunset was so that Wallace could see the claimant and decide for himself, then and there, whether he wished to employ the claimant and place in the latter's unsupervised control and custody an obviously valuable truck and trailer. Although the State Industrial Court, under the evidence, might have concluded to the contrary—that is, that Chapman was in fact employed in Oklahoma and gave his assent

to such employment when he agreed to go with Barber to Sunset, Texas, to pick up the truck, this court cannot say that there was not any competent evidence reasonably tending to support the Industrial Court's finding that the employer, Wallace, did not give his assent to the contract of employment until he actually handed the keys to the truck to the claimant at Wallace's home in Texas and followed that act by stating to Barber, in claimant's presence, "Well, I will try him on a trial run or two and see if he does all right, * * *."

Additionally, we notice that the first indication that claimant's employment would be on a trial, or conditional basis, was when he heard Wallace's statement to that effect, made to Barber while the three of them were at Wallace's residence in Texas. In other words, it could be said that Chapman did not know all the "terms" of his prospective employment until he arrived in Texas and after learning of them, he then gave his assent to being employed by Wallace on that basis.

 That a contract only becomes one when the parties to be bound thereby give their assent to it and to all of its material provisions is fundamental and the place where that final assent by both parties was accomplished in this matter was the precise issue of fact determined by the triers of the facts, the State Industrial Court.

In this situation, the claimant's contention that his contract of employment was entered into in Oklahoma is not supported by the cases cited in support of that contention: General Electric Company et al. v. Folsom et al. (1958), Okl., 332 P.2d 950; Williams Brothers Company et al. v. Wiley et al. (1959), Okl., 337 P.2d 1078; LeFlore County Gas and Electric Company et al. v. Sickmann et al. (1959), Okl., 348 P.2d 312; Foster Wheeler Corporation v. Bennett et al. (1960), Okl., 354 P.2d 764; Scotty's Flying & Dusting Service, Inc. et al. v. Neeser et al. (1964), Okl., 393 P.2d 842.

It is the judgment and order of this court that the order of the State Industrial Court, sitting en banc, to the effect that it did not have jurisdiction of this claim for compensation is hereby sustained.

IRWIN, C. J., BERRY, V. C. J., and DAVISON, BLACKBIRD, JACKSON, HODGES, and McINERNEY, JJ., concur.

WILLIAMS, J., concurs in result.