**Mickey GARRISON, Petitioner,**

v.

**BECHTEL CORPORATION, Crum & Forster, Commercial Insurance, and the Workers' Compensation Court, Respondents.**

No. 82767.

Supreme Court of Oklahoma.

Jan. 24, 1995.

Pamela K. Cornett, Tulsa, for petitioner.

Andrew Nestor, III, Tulsa, for respondents.

KAUGER, Vice Chief Justice.

Two issues are presented: 1) whether appellate courts, when reviewing the Workers' Compensation Court's determination of whether a worker was hired in Oklahoma, may utilize the any competent evidence standard of review; and 2) whether the worker was hired within Oklahoma. We find that: 1) because the issue of whether an employee was hired in Oklahoma is a jurisdictional question, appellate courts—rather than accepting the findings of the Workers' Compensation Court if supported by competent evidence—must review the record de novo to determine whether an employer-employee relationship existed in Oklahoma; and 2) because the facts do not support an authorized hiring in Oklahoma, the Workers' Compensation Court lacks jurisdiction.

## FACTS

The Bechtel Corporation (Bechtel/the employer), an Arkansas construction company, was awarded a construction project in Arkansas. Bechtel hired some workers for the project through a referral procedure which was governed by an agreement between Bechtel and the International Brotherhood of Electrical Workers labor union (IBEW).[1] The agreement provided that if Bechtel needed workers for a project, it would contact the local labor union in Arkansas to seek referrals for employment. If the local union

was able to find available workers to apply for employment at Bechtel, the union was obligated by the agreement to fill Bechtel's request for applicants by sending them to Bechtel. In the event the local union was unable to refer job applicants to the employer within forty-eight hours, Bechtel could seek qualified workers from any source it chose. Bechtel considered any worker who was referred to the project as an applicant for a job, until the worker passed security procedures and the worker was hired by them. Under the labor agreement, the authority of the Arkansas union was limited to referring prospective employees to Bechtel. The Arkansas union had no authority to hire employees for Bechtel and Bechtel had the right to refuse to hire any applicant sent by the union.

Pursuant to its agreement with the IBEW, Bechtel contacted the local union in Little Rock, Arkansas, and informed the union that it needed workers. The Arkansas union contacted a labor union in Tulsa, Oklahoma, seeking applicants for the Bechtel project. The local union in Tulsa contacted Mickey Garrison (Garrison/the employee), an Oklahoma resident and a member of the Tulsa union, concerning work at the Bechtel construction project in Arkansas. The Tulsa union informed the employee that he needed to go to the labor union in Little Rock, Arkansas, and pick up a referral slip the next day before going to the construction site. When Garrison arrived in Arkansas, he filled out some paperwork for the Arkansas union, obtained a referral slip from them, and went to the construction site.

At the construction site, Garrison handed in his referral slip and the employer sent him to training.[2] The employee did not receive

---

1. A copy of the agreement is not included in the record. However, Bechtel's labor relations supervisor testified that the company enters into labor agreements with all of the labor organizations it works with on each project to establish wages for work and other terms and conditions of employment for that particular project. The agreement only covers the geographic area where the project is located and it is not in effect for any other state in which the IBEW has a local union. Pursuant to the agreement, the amount of training the applicants have is determined by the union, not the employer.

2. When an applicant arrived at the project site the employer reviewed its own personnel records to see if the employee had previously worked at that particular site. If the employee had a bad work history with Bechtel, the employee would not be hired. Union dues were paid to the local union in Arkansas. The referral slip referred to Garrison as Bechtel's employee. The employee testified that when he arrived at the job site the employer did not do a background check before sending him to training. However, according to Bechtel, the union had faxed the referral slip

any pay or reimbursement for expenses for the trip from Tulsa to Arkansas or from the Arkansas union to the construction site. Garrison's pay began once he arrived at Bechtel and was sent to training. While working at the job site in Arkansas, Garrison injured his back on March 7, 1992. Bechtel and its insurance carrier were notified of the injury on March 9, 1992, and March 25, 1992, respectively. On March 26, 1992, the insurance carrier began paying temporary disability benefits and began providing medical treatment to the employee pursuant to Arkansas law.

On May 29, 1992, Garrison filed for workers' compensation benefits in Oklahoma alleging that: 1) although he was injured in Arkansas, the employment agreement was made in Oklahoma; and 2) because he was hired in Oklahoma, the Oklahoma Workers' Compensation Court had jurisdiction to award disability benefits pursuant to 85 O.S. 1991 § 4.[3] The insurance carrier denied that the employee was hired in Oklahoma and requested a hearing on the issue of whether Oklahoma had jurisdiction.

After the hearing, the Workers' Compensation Court dismissed and denied Garrison's claim for compensation finding that: 1) neither the Arkansas union nor the Tulsa union had authority to hire employees for Bechtel; 2) the function of the Arkansas union was to provide applicants to the employer which could be accepted or rejected exclusively by the employer; 3) the final acceptance of the employee's application for employment was at the job site in Arkansas; and 4) because the employee was employed and injured in Arkansas, Oklahoma was without jurisdiction. The employee appealed and the Court of Appeals affirmed. It found that the Workers' Compensation Court's determination that the employee was hired in Arkansas was supported by competent evidence and that the court did not err in denying the employee's claim for disability benefits. We granted certiorari on September 13, 1994.

I.

BECAUSE THE ISSUE OF WHETHER AN EMPLOYEE WAS HIRED WITHIN OKLAHOMA IS A JURISDICTIONAL QUESTION, APPELLATE COURTS—RATHER THAN ACCEPTING THE FINDINGS OF THE WORKERS' COMPENSATION COURT IF SUPPORTED BY COMPETENT EVIDENCE—MUST REVIEW THE RECORD *DE NOVO* TO DETERMINE WHETHER AN EMPLOYER–EMPLOYEE RELATIONSHIP EXISTED IN OKLAHOMA.

In his petition for certiorari, the employee argues that the Court of Appeals erred when it reviewed the Workers' Compensation Court's determination that the employment contract was entered into in Arkansas by utilizing the any competent evidence standard of review. Under this standard, review is confined to a search of the record for any competent evidence which supports the compensation court's decision.[4] We do not weigh conflicting evidence in order to determine where the preponderance lies, but only to ascertain whether the trial court's decision was supported by competent evidence.[5]

> In such a case the injured employee may elect to commence and maintain his action for benefits and compensation in the State of Oklahoma as provided in the Workers' Compensation Act and the Court is hereby vested with jurisdiction thereof as fully as if such injury or accident had occurred within this state...."

before the employee arrived at the job site and the employer screened the employee when it received the facsimile.

3. Title 85 O.S.1991 § 4 provides in pertinent part:
"... [A]ll the provisions of the Workers' Compensation Act of this state ... shall apply to employers and to employees, irrespective of where accident resulting in injury may occur, whether within or without the territorial limits of the State of Oklahoma, when the contract of employment was entered into within the State of Oklahoma, and the said employee was acting in the course of such employment and performing work outside the territorial limits of this state under direction of such employer.

4. *Owings v. Pool Well Serv.*, 843 P.2d 380, 383 (Okla.1992).

5. *Parks v. Norman Mun. Hosp.*, 684 P.2d 548, 552 (Okla.1984); *Wilkinson v. McGehee*, 651 P.2d 671, 672 (Okla.1982); *Loggins v. Wetumka Gen. Hosp.*, 587 P.2d 455, 457 (Okla.1978).

▮ Ordinarily, findings of fact made by the Workers' Compensation Court are conclusive and binding on appellate courts unless they have been ascertained to lack support in competent evidence.[6] However, when a question before the Workers' Compensation Court involves a jurisdictional fact issue, this Court and the Court of Appeals must decide that issue based upon a *de novo* review of the record.[7] Under this standard—rather than accept the fact findings of the Workers' Compensation Court as conclusive—we review the entire record, weigh the evidence, and make independent fact findings without deference to the fact findings or to the legal rulings made by the compensation court.[8] The question of whether an employer-employee relationship exists has long been recognized as a jurisdictional fact question subject to independent review.[9]

Pursuant to 85 O.S.1991 § 4, either an injury occurring in Oklahoma or an employment relationship forming within this State, is unequivocally and unmistakably a requisite to jurisdiction of the Workers' Compensation Court.[10] The question of where the employment contract was entered into is nothing

**6.** *Oklahoma Natural Gas Co. v. Williams*, 639 P.2d 1222, 1224–25 (Okla.1981); *Bama Pie, Inc. v. Roberts*, 565 P.2d 31, 34 (Okla.1977); *Goombi v. Trent*, 531 P.2d 1363, 1364 (Okla.1975). In *Parks v. Norman Mun. Hosp.*, see note 5, supra at 552, we held that when a workers' compensation court judge's decision is appealed to the three-judge review panel, the findings of the trial judge are reviewed by the clear weight of the evidence test. However, the reviewing power of the Supreme Court and the Court of Appeals is limited to questions of law. Appellate courts reviewing a decision of a workers' compensation trial tribunal, whether made by a trial judge or by the three-judge panel, are bound by the factual findings of the trial tribunal if supported by competent evidence. Only in the absence of such support will the compensation court's decision be viewed as erroneous as a matter of law and subject to appellate vacation.

**7.** *Duncan v. Powers Imports*, 884 P.2d 854 (Okla. 1994); *Swafford v. Sherwin Williams*, 863 P.2d 1215, 1217 (Okla.1993); *Mahan v. NTC of America*, 832 P.2d 805, 806 (Okla.1992).

**8.** *Mahan v. NTC of America*, see note 7, supra at 806; *Leonhardt Enter. v. Houseman*, 562 P.2d 515, 517 (Okla.1977); *Swyden Const. Co. v. White*, 383 P.2d 674, 675 (Okla.1963). In *Brown v. Burkett*, 755 P.2d 650, 651 (Okla.1988) at footnote 6, we noted that if an error sought to be corrected involves the resolution of a jurisdictional fact issue, no deferential standard of review may be accorded to the trial tribunal's finding of employment status. However, on non-jurisdictional fact issues we accept as binding the trial tribunal's findings if they are supported by competent evidence.

**9.** *Mahan v. NTC of America*, see note 7 at 806, supra. In *McKeever v. Egbert*, 170 Okla. 259, 40 P.2d 32, 35–36 (1934) this Court announced that in reviewing an award of the then compensation commission, it will not accept as conclusive the commission's findings of fact regarding jurisdictional questions; rather, we will weigh the evidence and make our own independent determination of fact from the record submitted.

*McKeever*, relying on *Crowell v. Benson*, 285 U.S. 22, 55–56, 52 S.Ct. 285, 293–94, 76 L.Ed. 598 (1932), distinguished between ordinary facts which were those "necessary in the routine of administering the relief," and jurisdictional facts which are "fundamental or jurisdictional in the sense that their existence is a condition precedent to the operation of the statutory scheme." This Court recognized that holding the findings of the workers' compensation commission, the determination of which predicates the commission's jurisdiction, binding on this Court if supported by competent evidence would contravene both the United States and Oklahoma Constitutions. Since *McKeever*, the State Industrial Commission has been transformed from an administrative agency into a judicial tribunal. See, 85 O.S.Supp.1959 § 91. However, we have continuously adhered to the *de novo* standard of review of jurisdictional questions utilized in *McKeever* when reviewing the Workers' Compensation Court's determination of jurisdictional fact issues subsequent to its change from an administrative agency to a judicial tribunal. See e.g., *Mahan v. NTC of America*, note 7 at 806, supra; *Coleman v. J.C. Penney*, 848 P.2d 1158, 1160 (Okla.1993); *Leonhardt Enter. v. Houseman*, see note 8 at 517, supra; *Mistletoe Exp. Serv. v. Britt*, 405 P.2d 4, 7 (Okla.1965); *Smith Bros. Road Const. Co. v. Palmer*, 389 P.2d 495, 496 (Okla.1964).

**10.** Title 85 O.S.1991 § 4, see note 3, supra. The jurisdictional nature of where an employment contract is entered into can be compared to the analogous question of whether a claimant is a physically impaired person under the Special Indemnity Fund Act (Act), 85 O.S.1991 §§ 171–176. If a person is physically impaired, jurisdiction is affixed in the Workers' Compensation Court in Fund cases. Accordingly, whether a worker is correctly judged to be a physically impaired person within the Act is a jurisdictional question and we are not bound nor concluded by the determination of the trial tribunal. *Special Indem. Fund v. Choate*, 847 P.2d 796, 801 (Okla. 1993); *Special Indem. Fund v. Stoveall*, 368 P.2d 847, 848 (Okla.1962); *Special Indem. Fund v. Smith*, 206 Okla. 185, 242 P.2d 159, 161 (1952).

more than an inquiry into a claimant's employment status in Oklahoma which requires a *de novo* review of the record.[11] However, language in our prior decisions is somewhat confusing as to the applicable standard of review to be applied when an appellate court reviews the Workers' Compensation Court's determination of whether a worker entered into an employment contract within Oklahoma. Consequently, we find it necessary to examine these prior decisions.

Prior to 1955, the Workers' Compensation Court did not have jurisdiction to hear and determine a claim for workers' compensation benefits when a worker received an injury outside the state of Oklahoma.[12] In 1955, the Legislature amended the workers' compensation laws to extend the jurisdiction of the Workers' Compensation Court when the employment contract was entered into in Oklahoma, regardless of where the injury occurred.[13]

After the 1955 amendment, this Court, in *General Elec. Co. v. Folsom*, 332 P.2d 950, 953 (Okla.1958), first reviewed an award of the Workers' Compensation Court[14] in which the jurisdiction of the tribunal was questioned. In *Folsom*, the petitioner alleged that the tribunal lacked jurisdiction to award benefits because the employment contract was entered into outside Oklahoma. The petitioner argued that because the question of where the employment contract was entered into was a jurisdictional question, the Supreme Court must not accept the Workers' Compensation Court's findings of fact as conclusive, but must weigh the evidence and make its own independent findings. Because the opposing party did not take issue with

the petitioner's proposition of error concerning the appropriate standard of review, we concluded that a *de novo* standard of review was correct. We independently reviewed and weighed the evidence and determined that the employee was hired in Oklahoma. In the first syllabus we stated that:

> "Whether a contract is made in a foreign state or in Oklahoma is a question of law and fact to be determined from all the facts and circumstances ..."

We again addressed the issue of whether an employment contract was entered into within Oklahoma in *Williams Bros. Co. v. Wiley*, 337 P.2d 1078, 1880–81 (Okla.1959); *Le Flore County Gas and Elec. Co. v. Sickmann*, 348 P.2d 312, 315 (Okla.1959); *Foster Wheeler Corp. v. Bennett*, 354 P.2d 764, 768 (Okla.1960); *Scotty's Flying & Dusting Serv. v. Neeser*, 393 P.2d 842, 845 (Okla.1964); *Armstrong v. Guy H. James Const. Co.*, 402 P.2d 275, 278 (Okla.1965); *Sims v. United Bridge & Iron*, 402 P.2d 911, 914 (Okla.1965); and *Secrest Pipe Coating Co. v. Strickland*, 447 P.2d 435, 438 (Okla.1968). In these decisions, we held that the issue of whether an employment contract of an injured worker was made in Oklahoma was a question of law and fact to be determined from facts and circumstances presented in each particular case. Although we did not expressly state the standard of review which we applied in these decisions, language in the opinions indicates that this Court independently reviewed the facts, weighed the evidence, and determined, without giving deference to the trial court's findings, where the employment contracts were entered into.[15]

---

**11.** See, *Daleo Inc. v. Edmonds*, 884 P.2d 544, 545 (Okla.1994); *Cherokee Lines, Inc. v. Bailey*, 859 P.2d 1106, 1110 (Okla.1993); *Hartford Ins. Group v. McDaniel*, 526 P.2d 941, 942–43 (Okla. 1974).

**12.** *Phillips v. H.A. Marr Grocery Co.*, 295 P.2d 765, 767 (Okla.1956); *Beck v. Davis*, 175 Okla. 623, 54 P.2d 371, 373 (1936). See, 85 O.S.1951 § 4.

**13.** Title 85 O.S.Supp.1955 § 4 provides in pertinent part:
"... [A]ll the provisions of the Workmen's Compensation Law ... shall apply to employers and to employees, irrespective of where accident resulting in injury may occur, wheth-

er within or without the territorial limits of the State of Oklahoma, when·the contract of employment was entered into within the State of Oklahoma ..."

**14.** We note that workers' compensation claims were formerly heard by the State Industrial Commission, 85 O.S.1951 § 69.1. However, because under the current statutory scheme the Commission is now the Workers' Compensation Court, 85 O.S.1991 § 1.2, references will be to the Workers' Compensation Court.

**15.** We note that in most of these decisions after reviewing and weighing the evidence and reaching our own conclusions of law and fact, we stated that there was competent evidence suffi-

However, beginning in 1959, another line of cases developed in which we expressly held that the question of where an employment contract was entered into was a question of fact, and would be reviewed by utilizing the any competent evidence standard of review. In *C. & H. Transp. Co. v. Berkley,* 341 P.2d 249 (Okla.1959), we stated in the syllabus:

"Where the contract or arrangement of employment was made is a question of fact, and if there is competent evidence reasonably tending to support the finding of the State Industrial Commission as to where such contract or arrangement was made, an award based thereon will not be disturbed on review by the Supreme Court."

The next year, in *Groendyke Transp., Inc. v. Gardner,* 353 P.2d 695, 697 (Okla.1960), we applied the any competent evidence standard of review utilized in *Berkley,* to review whether an employment contract was entered into outside of this state. Following *Berkley* and *Gardner,* we again reviewed the question of whether a contract of employment was consummated in Oklahoma by utilizing the any competent evidence standard of review in *Chapman v. Union Equity Coop. Exchange,* 451 P.2d 3, 5 (Okla.1969).

Although the *Berkley, Gardner,* and *Chapman,* line of authority exists, in *Hartford Ins. Group v. McDaniel,* 526 P.2d 941, 942–43 (Okla.1974), this Court noted that these prior decisions had held that the issue of whether a contract of employment existed in Oklahoma was a question of fact, not to be disturbed on review. However, without expressly overruling these decisions, we declined to follow them. Rather, we recognized that other decisions which held that the issue was a question of law and fact to be determined from all of the surrounding facts and circumstances were controlling. Accordingly, we reviewed the entire record and, after weighing the evidence, found that the evidence did not establish the existence of a contract in Oklahoma. Although we did not expressly state that we were applying a *de novo* standard of

review in *Hartford,* we declined to follow previous cases which applied the competent evidence test.

Recently, we reviewed the Workers' Compensation Court's determination that it had jurisdiction to adjudicate the workers' compensation claim of a worker who was injured outside of Oklahoma in *Cherokee Lines, Inc. v. Bailey,* 859 P.2d 1106, 1110 (Okla.1993). In addressing the question of whether the worker entered into the employment contract in Oklahoma, we recognized that when the existence of an employer-employee relationship is an issue before the Workers' Compensation Court, a jurisdictional question is presented and this Court does not accept the findings of the Workers' Compensation Court as conclusive. Rather, we weigh the evidence contained in the record and independently evaluate law and facts to determine the existence of the relationship. In *Daleo Inc. v. Edmonds,* 884 P.2d 544, 545 (Okla. 1994), we again recognized that the *de novo* standard of review which we utilized in *Bailey,* applied in addressing the issue of whether a worker, who was injured outside of Oklahoma, was employed in Oklahoma.

In *Bailey* and *Daleo,* we expressly recognized that the question of whether the employment contract was entered into within Oklahoma is an inquiry into whether an employer-employee relationship existed in Oklahoma subject to *de novo* review. *Hartford, Bailey,* and *Daleo,* implicitly overruled *C. & H. Transp. Co. v. Berkley,* 341 P.2d 249 (Okla.1959); *Groendyke Transp., Inc. v. Gardner,* 353 P.2d 695, 697 (Okla.1960); and *Chapman v. Union Equity Co-op. Exchange,* 451 P.2d 3, 5 (Okla.1969) to the extent they applied the competent evidence standard of review. Today, we expressly overrule *Berkley, Gardner,* and *Chapman* only to the extent that they applied the competent evidence test when reviewing the question of whether an employment contract was entered into in Oklahoma. Because the issue of whether an employee was hired within Oklahoma is a jurisdictional question, we find that the Supreme Court and the Court of Appeals

cient to sustain the Workers' Compensation Court's decision. This does not indicate that we did not make independent findings. Rather, af-

ter our own independent review we found that the evidence was sufficient or competent to reach the same conclusion as the compensation court.

must decide independently based upon a *de novo* review of the record, without deference to the findings of fact or to the legal rulings made below, whether an employer-employee relationship existed in Oklahoma.

## II.

## BECAUSE THE FACTS DO NOT SUPPORT AN AUTHORIZED HIRING IN OKLAHOMA, THE WORKERS' COMPENSATION COURT LACKS JURISDICTION.

■ The employer asserts that the evidence establishes that Garrison's employment contract was entered into in Arkansas. The employee argues that Garrison was hired in Oklahoma. An employer-employee relationship is created by contract, either express or implied, or by unequivocal acts of the parties recognizing the existence of the relationship.[16] Although the Workers' Compensation Act is construed liberally, in favor of the workers it is intended to benefit, a claimant is held to strict proof of the existence of an employment relationship in order to be covered by the provisions of the Oklahoma Act.[17]

■ Every contract results from an offer and acceptance.[18] An offer becomes a binding promise and results in a contract only when it is accepted.[19] To constitute acceptance, there must be an expression of the intent to accept the offer, by word, sign, writing or act, communicated or delivered to the person making the offer or the offeror's agent.[20] Generally, a contract is deemed to have been made where the final assent to the offer is given.[21] The place where the contract is made is the controlling issue.[22]

■ To establish that an employment contract was entered into within Oklahoma, the employee must prove that an employment offer was made by the employer or its agent and that it was accepted by the employee in Oklahoma. Here, it is undisputed that: 1) Bechtel did not personally contact Garrison in Oklahoma, rather, the employee was advised of the job by the Tulsa labor union; 2) the Arkansas labor union contacted the Tulsa labor union seeking workers to refer to Bechtel; 3) the Arkansas union was under a referral contract with the employer, but the Tulsa union did not have a contract with Bechtel; 4) Garrison did not speak personally with anyone from Bechtel until he reached the construction site in Arkansas; 5) the employee did not fill out any paperwork whatsoever until he reached the Arkansas labor union; 6) Garrison was not compensated for his trip from Tulsa to the Arkansas union or from the Arkansas union to the construction site; and 7) the employer began paying Garrison after he reached the construction site and began training. Accordingly, the determinative issues, under the facts presented, are: 1) whether the Oklahoma union acted as an agent of the employer and made Garrison an offer of employment; and, if so, 2) whether the employee accepted the employment offer in Oklahoma.

Garrison cites *Foster Wheeler Corp. v. Bennett*, 354 P.2d 764, 767–68 (Okla.1960), in support of the proposition that the employer's request for referrals from the Arkansas labor union and the Arkansas union's subsequent request for workers from the Oklahoma union had the effect of making the Oklahoma union an agent of the employer.

**16.** *Cherokee Lines, Inc. v. Bailey,* see note 11, supra; *Beall v. Altus Pub. School Dist.,* 632 P.2d 400, 402 (Okla.1981); *Landrum v. Ownby,* 290 P.2d 400, 402 (Okla.1955).

**17.** *Daleo, Inc. v. Edmonds,* see note 11, supra; *Cherokee Lines, Inc. v. Bailey,* see note 11, supra; *Beall v. Altus Pub. School Dist.,* see note 16, supra.

**18.** *National Outdoor Advertising Co. v. Kalkhurst,* 418 P.2d 661, 664 (Okla.1966); *Sims v. United Bridge & Iron,* 402 P.2d 911, 913 (Okla.1965).

**19.** *Armstrong v. Guy H. James Constr. Co.,* 402 P.2d 275, 277 (Okla.1965); *Sims v. United Bridge & Iron,* see note 18, supra.

**20.** *Armstrong v. Guy H. James Constr. Co.,* see note 19, supra.

**21.** *Daleo, Inc. v. Edmonds,* see note 11, supra; *Armstrong v. Guy H. James Const. Co.,* see note 19, supra; *General Elec. Co. v. Folsom,* 332 P.2d 950, 952 (Okla.1958).

**22.** *Daleo, Inc. v. Edmonds,* see note 11, supra; *Hartford Ins. Group v. McDaniel,* see note 11, supra.

Consequently, the employee contends that the Oklahoma union had the authority to hire Garrison on Bechtel's behalf and it did so in Oklahoma. However, *Foster* is distinguishable from the present case on its facts and is not dispositive of the issue presented here. *Foster* involved an employer who, acting pursuant to an arrangement with an Oklahoma union, contacted the labor union directly and sought workers to employ.[23]

Here, Bechtel contacted the Arkansas labor union directly, seeking referrals, but did not contact the Tulsa union or the employee. Furthermore, Bechtel did not have any type of agreement with the Tulsa union. Rather, the Arkansas labor union contacted the labor union in Oklahoma attempting to find a worker to send to refer to the employer. Although we have not previously addressed the issue of whether a labor union acts as an agent of an employer and makes employment offers when it contacts another labor union seeking workers to refer to an employer, other jurisdictions have addressed this precise issue.

One court has found that an employment contract is entered into within the state where the worker was contacted by the worker's local labor union when the union was contacted by an out-of-state labor union seeking referrals for an employer.[24] Howev-

---

**23.** In *Foster Wheeler Corp. v. Bennett*, 354 P.2d 764, 767–68 (Okla.1960), pursuant to an arrangement for employment with a labor union in Tulsa, Oklahoma, the foreman of a Kansas company called the union directly and requested three iron workers. The union sent three journeymen iron workers with a referral slip. When the workers arrived in Kansas they began working on the project. The workers were paid from the time that they reported for work at the Tulsa union, until they arrived at the Kansas job site. Subsequently, one of the workers was injured in Kansas and the worker attempted to recover workers' compensation benefits in Oklahoma. This Court held, in *Foster*, that the employment contract was made in Oklahoma. We cited with approval *Gomez v. Federal Stevedoring Co., Inc.*, 5 N.J.Super. 100, 68 A.2d 482, 483 (1949) which held that a labor union acted as an agent of the employer and hired its members on behalf of the employer. While *Foster* and *Gomez* may support the proposition that a labor union may, in some circumstances, act with the responsibility and authority to hire a worker for an employer, we find that they are both distinguishable from the present case on their facts and not dispositive of the issue presented here. Both *Foster* and *Gomez* involved employers who, acting pursuant to arrangements with labor unions, contacted the labor union directly and sought workers to employ. We note that some courts in other jurisdictions, in particular factual situations similar to those in *Foster* and *Gomez*, have also found that labor unions act as agents of employers and hire employees in the state where the labor union is located. See e.g., *Reynolds Elec. & Eng'g Co. v. Workmen's Compensation Appeals Board*, 55 Cal. Rptr. 248, 252, 65 Cal.2d 429, 421 P.2d 96, 100 (1967); *Mattel v. Pittman Const. Co.*, 248 La. 540, 180 So.2d 696, 698 (1965); *Houle v. Stearns–Rogers Mfg. Co.*, 279 Minn. 345, 157 N.W.2d 362, 364 (1968); *Bowers v. American Bridge Co.*, 43 N.J.Super. 48, 127 A.2d 580, 585 (1956); *Warren v. Dixon & Christopher Co.*, 252 N.C. 534, 114 S.E.2d 250, 254 (1960). However, in some circumstances, courts have found that the employee is not hired by the union. *Miller v. Browning*

*S.S. Co.* 165 F.2d 209, 210 (C.C.A.2 N.Y.1947), *cert. denied* 334 U.S. 834, 68 S.Ct. 1341, 92 L.Ed. 1761 (1948) (Employee referred to employer by union was merely a prospective employee.); *Posey v. Industrial Com'n*, 87 Ariz. 245, 350 P.2d 659, 662 (1960) (Pursuant to union contract, employer requesting workers from Arizona did not hire employee where neither the worker nor the employer is bound to an employment until arrival upon the job site.); *Midway Landfill, Inc. v. Industrial Com'n*, 55 Ill.2d 592, 304 N.E.2d 607 (1973) (Employee was not entitled to recovery in Illinois where union was not acting as an agent of the employer when it referred employee to a job in Indiana.); *Nelson v. McAbee Const., Inc.*, 591 So.2d 1015, 1016–17 (Fla.App. 1 Dist. 1991) (Florida union member contacted by out-of-state employer was not hired in Florida when the union had no authority to hire for the employer.); *Hunt v. Jeffries*, 236 Mo.App. 476, 156 S.W.2d 23, 28 (1941) (Union acts as agent of employee, rather than employer.); *Deister v. Thompson*, 352 Mo. 871, 180 S.W.2d 15, 18 (1944) (Worker was not hired in Missouri where the worker could be accepted or rejected by the employer at the job site in Kansas.); *Carpenter v. William S. Lozier, Inc.*, 353 Mo. 864, 184 S.W.2d 999, 1001 (1945).

**24.** In *Conant's Case*, 33 Mass.App.Ct. 695, 604 N.E.2d 711, 714 (1992) the Massachusetts Court of Appeals addressed a factual scenario similar to the present case. Pursuant to an agreement with a local union in Vermont, the employer requested workers. The Vermont union contacted a labor union in Massachusetts seeking workers. The Massachusetts union relayed the request to a Massachusetts worker. The court held that the employment contract, at least where the employer carried workers' compensation insurance in Massachusetts, was entered into in Massachusetts because it was created between the employer and the worker when the employee accepted the offer and undertook to travel to the job site.

er, other courts have found that where one labor union contacts a second labor union in another state seeking employees, the second union does not have any authority to hire workers on behalf of the employer.[25] Absent authority to hire, the union does not act as the employer's agent to offer employment, and the employee is not hired in the state where the employee was contacted by the union. We find this reasoning persuasive.

An agency relationship generally exists if two parties agree that one is to act for the other. An essential element of an agency relationship is that the principal have some degree of control over the conduct and activities of the agent.[26] Here, Bechtel did not have an agreement with the Tulsa union nor did it contact the union seeking employees. There is no evidence that the employer granted the Tulsa union any authority, express or implied to hire for the employer. Under the facts presented, the Tulsa union had no authority to act on behalf of Bechtel and offer Garrison a job in Arkansas.[27] Absent any authority to hire, the Tulsa union was not acting as an agent of the employer and was not authorized to make an offer of employment to the employee. Any purported acceptance made by the employee during the telephone conversation between the employee and the Tulsa union was ineffectual. The employment contract was not entered into within Oklahoma.[28] Accordingly, the Oklahoma Workers' Compensation Court lacks jurisdiction to hear and determine the employee's claim for benefits.

## CONCLUSION

This Court has continuously held that when a decision of the Workers' Compensation Court is reviewed and it involves a jurisdictional fact issue, the appropriate standard of review is *de novo*.[29] The issue of whether an employer-employee relationship exists has long been recognized as a jurisdictional fact question subject to independent review. The

**25.** *Welch v. S J. Groves & Sons Co.*, 555 So.2d 647, 649 (La.App. 4 Cir.1989) (New Jersey union contacted Louisiana union seeking workers. Louisiana union contacted a Louisiana resident who went to New Jersey union, was told where to go, and went to the job site. There was no agency relationship between the unions nor was there evidence of any authority to hire.); *Jarrell v. Employers Cas. Ins. Co.*, 499 So.2d 947, 948 (La.App. 3 Cir.1986) (Employer notified local union in Texas that it needed workers. Texas union called Louisiana union and agent at Louisiana union informed worker of job in Texas. The worker was instructed to report to the Texas union and was then instructed by the Texas union to go to work at the job site in Texas. The court found that there was no evidence that the employer granted the Louisiana union any authority, express or implied, to hire for the employer.); *Molinario v. Hartford Ins. Co.*, 462 So.2d 253 (La.App. 4 Cir.1984) (Under union contract, employer was required to hire workers from local union in Massachusetts. The Massachusetts union contacted a union in Louisiana seeking a worker. The court held that the contract for hire was not made in Louisiana.); *Silva v. James Ursini Co.*, 475 A.2d 205, 207, 208 (R.I.1984) (A Connecticut union contacted a Rhode Island union seeking workers to fill a job at employers place of business in Connecticut. The Rhode Island union contacted a Rhode Island worker and asked if the worker was interested in the job. The worker responded "yes" and was told where to report to work. The court held that no agency relationship existed and the worker was not employed in Rhode Island. The role of the union was to fill the needs of the Connecticut union, not to act on behalf of the employer and hire employees. Any purported acceptance by he employee during telephone conversations between the employee and the Rhode Island union was ineffective.).

**26.** *Haworth v. Central Nat'l. Bank of Oklahoma City*, 769 P.2d 740, 743 (Okla.1989).

**27.** The employee contends that because the Tulsa union had the apparent authority to offer Garrison employment, he was hired in Oklahoma. We find this argument unpersuasive; apparent authority results from manifestations by the principal to a third person that another is the principal's agent. *Stephens v. Yamaha Motor Co., Ltd., Japan*, 627 P.2d 439, 440–41 (Okla.1981). The only apparent authority the Tulsa union may have had under the facts presented is the authority to refer prospective employees to the Arkansas union, not to hire for Bechtel.

**28.** The employee argues that the trial court erred because it found that the employee made the offer of employment and it was accepted by the employer at the job site. Because we have found that the Tulsa union did not have the authority to make employment offers or accept them for the employer, we need not address the issue of whether the employee was hired at the job site in Arkansas or at the Arkansas union. For jurisdictional purposes we need only determine whether the employee was hired within this State.

**29.** See discussion note 9, supra.

question of where an employment contract was entered into is nothing more than an inquiry into a claimant's employment status within Oklahoma. Accordingly, when reviewing a determination by the Workers' Compensation Court that an employment contract was entered into within Oklahoma, the Supreme Court and the Court of Appeals must decide independently based on a *de novo* review of the record whether an employee-employer relationship existed within the state.

The employer entered into a referral contract with the Arkansas labor union. Bechtel did not contact the employee or the Tulsa union. Rather, the Arkansas labor union contacted the Tulsa union seeking employees to refer to Bechtel. The Tulsa union contacted the employee and referred him to the Arkansas union. Unless the Tulsa labor union had authority to hire workers on behalf of the employer, no contract for employment could exist in Oklahoma. Under the facts presented there is no evidence that the employer granted the Tulsa union any authority, express or implied, to hire for the employer. Any purported acceptance made by the employee to the Tulsa union was ineffectual and the contract was not entered into within Oklahoma.

### CERTIORARI PREVIOUSLY GRANTED; COURT OF APPEALS OPINION

**VACATED; WORKERS' COMPENSATION COURT SUSTAINED.**

ALMA WILSON, C.J., and HODGES, LAVENDER, SIMMS, HARGRAVE, SUMMERS and WATT, JJ., concur.

OPALA, J., concurs in part/dissents in part.

OPALA, Justice, dissenting in part.

I concur in the court's view that a trial tribunal's resolution of a disputed fact issue over the *locus contractus* [1] that determines jurisdiction of the claim is reviewable *de novo* [2]; I recede from today's pronouncement insofar as it holds that Oklahoma is not the *locus in quo* for this claim.[3]

I would hold that all local union chapters involved in claimant's recruitment were the employer's agents, whose offer of employment *was accepted in this State by the claimant's act of proceeding to the job site in a neighboring state.*[4]

1. *Locus contractus* is where the event occurred which made the contract effective, *not* the place where the company intended for it to be performed, nor the *locus* where the company may avoid the contract for breach of a condition subsequent. *See Lilienthal v. Suffolk Brewing Co.,* 154 Mass. 185, 28 N.E. 151 (1891); *Brown & Sons v. Wieland,* 116 Iowa 711, 89 N.W. 17 (1902); *Benedict v. Dakin,* 243 Ill. 384, 90 N.E. 712 (1910).

2. *Mahan v. NTC of America,* Okl., 832 P.2d 805, 807 (1992) (Opala, J., concurring).

3. Company calls for union help in recruiting labor for a job site are governed by an *understood course of dealing. They do not happen in a vacuum.* Union job referral slips *go* to those known to have the needed skills. It is *only* these workers—already *pre*screened—who may respond by reporting to the job site. Their individual employment contract, which is forged by this "act-induced-by-promise" process, may be avoided *if* subsequent on-site screening should turn up an

unacceptable worker, based on the company's minimum hiring requirements. In the latter event, the resulting defeasance is not for failure of a condition *precedent* but rather of condition *subsequent. See Bultman v. Frankart,* 194 Wis. 296, 215 N.W. 432, 433 (1927); *Lilienthal, supra* note 1, 28 N.E. at 151.

The place of a union-initiated employment contract *formation (locus contractus)* need not be the same as the *situs* where company screening is to be conducted, *unless* hiring is clearly *pre*conditioned on such *pre*screening. There is *nothing* in this record to indicate that the employer's promise, transmitted by the union's local chapters, was understood by the claimant—in words, by custom or previous course of dealing— to be *dependent* on his passing some on-site inspection test or upon the company's job site acceptance of the worker. *See Southland Cotton Oil Co. v. Renshaw,* 148 Okl 107, 299 P. 425, 429 (1931).

4. *See Dangott v. ASG Industries, Inc.,* Okl., 558 P.2d 379, 382 (1976).