In re COMMERCIAL FINANCIAL SERVICES, INC., and CF/SPC Ngu, Inc., Debtors.

Commercial Financial Services, Inc., Debtor, and Bradley D. Sharp, Trustee of the CFS Liquidating Trust, Plaintiffs,

v.

Mike C. Temple, Defendant.

Bankruptcy Nos. 98–05162–R, 98–05166–R.

Adversary No. 02–0110–M.

United States Bankruptcy Court, N.D. Oklahoma.

June 13, 2003.

Larry M. Wolfson, Robert R. Stauffer, Jenner & Block, LLC, Chicago, IL, Neal Tomlins, Tulsa, OK, for Plaintiff or Petitioner.

John B. Heatly, Oklahoma City, OK, for Defendant or Respondent.

### MEMORANDUM OPINION

TERRENCE L. MICHAEL, Bankruptcy Judge.

THIS MATTER comes before the Court pursuant to the Motion to Dismiss or Alternative Motion for Summary Judgment on Statute of Limitations With Brief (the "Motion"), filed by Mike C. Temple, Defendant herein ("Defendant" or "Temple"), and the Response to Defendant's Motion to Dismiss or, Alternative Motion for Summary Judgment on Statute of Limitations

(the "Response"), filed by Commercial Financial Services, Inc. and Bradley D. Sharp, Trustee of the CFS Liquidating Trust, Plaintiffs herein (collectively the "Plaintiffs"), and the various replies and responses to each. The following findings of fact and conclusions of law are made pursuant to Bankruptcy Rule 7052 and Federal Rule of Civil Procedure 52.

## Jurisdiction

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C.A. § 1334(b).[1] Reference to the Court of this adversary proceeding is proper pursuant to 28 U.S.C.A. § 157(a). This is a core proceeding as contemplated by 28 U.S.C.A. § 157(b)(2)(H).

## Summary Judgment Standard

Summary judgment is proper where " 'there is no genuine issue as to any material fact.' "[2] Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[3]

The United States Court of Appeals for the Tenth Circuit has ruled that "[e]ntry of summary judgment is mandated, after an adequate time for discovery and upon motion, 'against a party who fails to make a showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial'."[4] Summary judgment is only appropriate if the facts set forth by the movant are properly supported with admissible evidence and the facts affirmatively show that movant is entitled to judgment as a matter of law.[5]

## Findings of Fact

The Court finds the following facts are undisputed for purposes of the Motion and the Response:

1. Temple was employed by Commercial Financial Services, Inc. ("CFS") as its "Chief Financial Officer" pursuant to an employment agreement dated March 1, 1996.

2. On September 5, 1996, a second employment agreement was executed between Temple and CFS under which Temple's employment was continued on different terms from the first employment agreement.

3. On July 13, 1998, Temple and CFS executed an agreement entitled "Termination of Employment Agreement."

4. Under the terms of the Termination of Employment Agreement, CFS, as employer, agreed to pay Temple, as employee, a lump sum payment of $3,250,000.00, subject to tax withholdings. Said amount was payable on July 17, 1998.

5. On July 17, 1998, CFS wire transferred to Temple the sum of $2,130,375.00 (representing

---

1. Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C.A. § 101 *et seq.* (West 2003).

2. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

3. FED. R. CIV. P. 56(c) (West 2003), made applicable to this adversary proceeding by FED. R. BANKR. P. 7056 (West 2003).

4. *Aldrich Enter., Inc. v. United States,* 938 F.2d 1134, 1138 (10th Cir.1991) (quoting *Celotex, supra,* 477 U.S. at 322, 106 S.Ct. 2548).

5. *See* FED. R. CIV. P. 56(e) (West 2003).

$3,250,000.00 less applicable federal and state taxes).

6. On December 11, 1998, CFS filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

7. On December 18, 1998, the United States Trustee appointed the Official Committee of Unsecured Creditors ("OCUC") in CFS's Chapter 11 case. The appointment of OCUC was amended on December 22, 1998.

8. The Court approved the appointment of multiple counsel for OCUC, including: Johnson, Allen, Jones & Dornblaser; Verner, Liipfert, Bernhard, McPherson and Hand, Chartered; and Robert Glass ("Mr. Glass") of the Glass Law Firm, P.C.

9. On November 5, 2000, Larry M. Wolfson ("Mr. Wolfson"), counsel for CFS, sent a letter to John B. Heatly ("Mr. Heatly"), counsel for Temple, concerning a proposed tolling agreement (the "Tolling Agreement") between the parties. A draft of the Tolling Agreement was included with the letter for review by Mr. Heatly.

10. On November 27, 2000, OCUC filed a motion entitled "OCUC's Motion for Authorization to Commence and Prosecute Certain Third Party Causes of Action in the Name of Debtor, and on Behalf of the Estate" (the "OCUC Motion"). In the OCUC Motion, OCUC represented to the Court that CFS, as debtor-in-possession, had decided not to pursue claims against Mike Temple.

11. In the OCUC Motion, OCUC stated its intention to file suit against several individuals, including Temple, prior to December 11, 2000, if the OCUC Motion was granted. The OCUC Motion was set for a November 30, 2000, hearing. The Court's order setting the OCUC Motion for hearing was served on Mr. Heatly on November 27, 2000.

12. On November 29, 2000, Mr. Glass had a telephone conversation with Mr. Heatly regarding his intentions of filing a suit against Temple prior to December 11, 2000, if the Court approved the motion. Mr. Glass also stated that he would delay filing suit if Temple entered into a tolling agreement with CFS.

13. On November 29, 2000, Mr. Heatly revised the Tolling Agreement proposed by CFS. His revisions included striking a recital paragraph as well as extending the definition of CFS in paragraph 1(a) to include OCUC, the Official Committee of Asset–Backed Security Holders, and any other person or entity authorized to assert claims on behalf of CFS or its bankruptcy estate. These revisions were hand-written into the Tolling Agreement by interlineation. The revised Tolling Agreement was then sent to Mr. Glass and to a Mr. John D. Eaton by facsimile.

14. On November 29, 2000, Richard P. Steinkin ("Mr. Steinkin") of Jenner & Block, counsel for CFS, sent a letter to Mr. Heatly by facsimile transmitting the Tolling Agreement, revised as requested by Temple. Mr. Steinkin requested that Temple sign the Tolling Agreement before the hearing on OCUC's motion set for November 30, 2000.

15. On November 29, 2000, Temple signed the Tolling Agreement identical to the Tolling Agreement which Mr. Steinkin had sent to Mr.

Heatly. The Tolling Agreement contains the following provisions:

3. Nothing in this agreement shall be construed as an admission by Temple that any Claim could properly be asserted against him or that such Claim would have any basis in law or fact. Except insofar as this agreement relates to timing defenses, this agreement is not intended to and shall not have any effect whatsoever upon any defense Temple may assert in response to any claim in any action or proceeding. This agreement does not revive any claim that would have been barred as of the time of the agreement.

\* \* \* \* \* \*

7. This agreement may not be amended, extended or otherwise modified without the prior written agreement of each party hereto.

8. This agreement may be executed in identical counterparts with the facsimile signatures having the same force and effect as original signatures.

16. On November 29, 2000, at 1:56 p.m., Mr. Heatly sent the signed Tolling Agreement by facsimile to Mr. Glass and Mr. Steinkin. Counsel for CFS confirmed the receipt of the faxed Tolling Agreement with Temple's signature the same day.

17. The Tolling Agreement was signed by Fred Caruso, president of CFS, on November 29, 2000.

18. At the November 30, 2000, hearing, Mr. Glass and Neal Tomlins ("Mr. Tomlins"), counsel for OCUC and CFS respectively, announced to the Court that CFS had entered into the Tolling Agreement with Temple. Mr. Glass and Mr. Tomlins also advised the Court at the hearing that the OCUC Motion would be withdrawn and that OCUC and CFS would not pursue any claims against Temple at that time. Neither Temple nor anyone on his behalf was present at the hearing.

19. On December 1, 2000, Mr. Glass filed a Notice of Withdrawal of the OCUC Motion. The certificate of mailing on this notice states that it was mailed to "Counsel for Michael Temple: John B. Heatly, Esq."

20. No suit or adversary proceeding was commenced against Temple by CFS or OCUC before December 11, 2000.

21. Jerry L. Switzer ("Mr. Switzer"), counsel for CFS, sent a letter dated April 10, 2001, to Mr. Heatly expressing CFS's desire to extend the Tolling Agreement until September 30, 2001. Mr. Heatly signed the letter from Mr. Switzer accepting the offer to extend the Tolling Agreement on behalf of Temple on April 24, 2001. In addition, Mr. Heatly expressed his view in a separate letter that the original Tolling Agreement was not effective because CFS had not "communicated its acceptance" of the Tolling Agreement to Temple. Mr. Heatly, however, agreed on behalf of Temple that the extension of the Tolling Agreement effected by his signature on Mr. Switzer's letter of April 10, 2001, was effective to toll the statute of limitations as to all "viable" claims.

22. Mr. Switzer sent a letter dated September 21, 2001, to Mr. Heatly, expressing CFS's desire to extend the Tolling Agreement until November 30, 2001. Mr. Heatly signed the letter from Mr. Switzer

accepting the offer to extend the Tolling Agreement on behalf of Temple on September 24, 2001. In addition to signing the letter, Mr. Heatly again expressed his view that the Tolling Agreement was not effective because CFS had not "communicated its acceptance" of the Tolling Agreement to Temple. Mr. Heatly agreed on behalf of Temple, however, that the extension of the Tolling Agreement effected by his signature on Mr. Switzer's letter was effective to toll the statute of limitations as to all "viable" claims.

23. Corali Lopez–Castro, Esq., of Kozyak, Tropin & Throckmorton, a law firm retained as special counsel to CFS, sent a letter to Mr. Heatly dated November 16, 2001, expressing the desire of CFS to extend the Tolling Agreement for a final time until May 30, 2002. Mr. Heatly signed the letter from Ms. Lopez–Castro accepting CFS's offer to extend the Tolling Agreement on behalf of Temple on November 26, 2001. At the time he signed the letter agreeing to the final extension of the Tolling Agreement on November 26, 2001, Mr. Heatly wrote a letter addressed to Tucker Ronzetti of Kozyak, Tropin, dated November 26, 2001. In the letter, Mr. Heatly referenced his earlier letters to Mr. Switzer of April 24, 2001, and September 24, 2001, again confirming his position that the Tolling Agreement was effective to extend the statute of limita-

tions with respect to all "viable" claims.

24. On May 29, 2002, Plaintiffs filed their original Complaint seeking to set aside the certain transfers to Temple under § 548 of the Bankruptcy Code.

25. On July 17, 2002, Temple filed a Motion to Dismiss the Complaint as untimely under § 546 of the Bankruptcy Code.

26. On July 24, 2002, Plaintiffs filed a First Amended Complaint adding claims under the Oklahoma Uniform Fraudulent Transfer Act, Okla Stat Ann. tit. 24, § 112 *et seq.* (West 1987) and alleging the existence and validity of the Tolling Agreement.

## Conclusions of Law

Section 546 of the Bankruptcy Code requires that adversary proceedings involving fraudulent transfers be brought within two years of the entry for order of relief.[6] The United States Court of Appeals for the Tenth Circuit has ruled that this two year period begins to run from the date a debtor files a voluntary petition with the bankruptcy court.[7] CFS filed a voluntary petition for Chapter 11 reorganization on December 11, 1998, and brought this adversary proceeding (along with Bradley D. Sharp, Trustee of the CFS Liquidating Trust) against Temple on May 29, 2002, almost three and a half years after the petition date. Plaintiffs argue that under the Tolling Agreement, the adversary proceeding was timely filed and should proceed.[8] Temple argues that the Tolling

---

6. § 546(a)(1)(A).

7. *Zilkha Energy Co. v. Leighton,* 920 F.2d 1520, 1524 (10th Cir.1990); *see also Starzynski v. Sequoia Forest Indus.,* 72 F.3d 816, 820 (10th Cir.1995).

8. The Tolling Agreement, as modified in subsequent agreements, suspended "any statute of limitations, repose period, laches period, or any similar other period of time in any way related to any Timing Defense ... with re-

Agreement was not a valid contract between the parties, and that even if valid, may not as a matter of law operate to waive or extend the two year time bar of § 546. The Court rejects Temple's arguments for the reasons set forth herein.

*Validity of the Tolling Agreement*

██ Determining the validity of the Tolling Agreement requires the consideration of basic principles of contract law. As the Oklahoma Supreme Court has stated: "Every contract results from an offer and acceptance."[9] An offer is any "display of willingness to enter into a contract on specified terms, made in a way that would lead a reasonable person to understand that an acceptance, having been sought, will result in a binding contract."[10] Acceptance, on the other hand, results when a party expresses his or her intent to "accept the offer, by word, sign, writing or act, communicated or delivered to the person making the offer or the offeror's agent."[11] Once an offer is accepted there is a binding contract between the parties.[12] In Oklahoma, "nothing after acceptance is required to make a contract effective. The act of acceptance closes the contract."[13]

██ On November 5, 2000, counsel for CFS sent to Temple, via facsimile, a proposed tolling agreement for his consideration. The Tolling Agreement expressed CFS's willingness to enter into a contract with Temple and constituted an offer. On November 29, 2000, counsel for Temple sent back the offer with revisions to CFS. Attaching additional conditions to an offer constitutes a counteroffer.[14] "A counteroffer constitutes a rejection of the offer theretofore made by the other party to the transaction."[15] On November 29, 2000, counsel for CFS sent counsel for Temple another Tolling Agreement with the revisions requested by Temple. This too constituted an offer by CFS. Later that day, Temple signed the second offer and faxed the same to CFS. The legal effect of his signature and delivery of the Tolling Agreement to counsel for CFS constituted an acceptance of CFS's offer. Under Oklahoma law, "a contract becomes effective on the date acceptance is posted in the mail."[16] The Oklahoma Supreme Court has ruled that transmitting an acceptance by facsimile is subject to this rule.[17] Accordingly, the Tolling Agreement between CFS and Temple became a binding contract on November 29, 2000, when Temple transmitted the Tolling Agreement to counsel for CFS.

---

spect to any Claim brought by CFS" until May 30, 2002. *Pl.'s Ex. 11.*

9. *Garrison v. Bechtel Corp.,* 889 P.2d 273, 281 (Okla.1995).

10. BLACK'S LAW DICTIONARY 1111 (Bryan A. Garner ed., West 7th ed.1999). While no Oklahoma cases could be found detailing the elements required for an offer, common sense dictates the correctness of the definition listed in the dictionary.

11. *Garrison, supra,* 889 P.2d at 281.

12. *Id.*

13. *E. Central Okla. Elec. Co–op., Inc. v. Okla. G & E Co.,* 505 P.2d 1324, 1329 (Okla.1973).

14. *See Young v. Roller,* 201 Okla. 99, 201 P.2d 793, 796 (1948).

15. *Id.* (citations omitted); *see also Nabob Oil Co. v. Bay State Oil & Gas Co.,* 208 Okla. 296, 255 P.2d 513, 515 (1953) (request for modifications of a proposed contract constitutes a rejection of the original offer).

16. *Woody v. State, ex rel. Dept. of Corrections,* 833 P.2d 257, 258 (Okla.1992). This is often referred to as the "mailbox rule."

17. *Osprey L.L.C. v. Kelly–Moore Paint Co.,* 984 P.2d 194, 199 n. 16 (Okla.1999).

Temple musters essentially two arguments in support of his position that the Tolling Agreement does not represent a valid contract. First, Temple argues that the Tolling Agreement fails because CFS did not communicate its "acceptance" of the Tolling Agreement until after the two year time bar of § 546 had expired. In a variation upon the same theme, Temple also contends that an agent of CFS was required under the contract to sign and deliver the Tolling Agreement to be effective. Both arguments lack merit.

On November 29, 2000, CFS, through its counsel, sent the Tolling Agreement to Temple through his counsel for consideration. Temple then signed the Tolling Agreement and returned the same to CFS. In this transaction, CFS was the offeror, not Temple. Temple accepted the offer of the Tolling Agreement through his execution and return of the same. Temple's argument that CFS somehow had to communicate its "acceptance" to Temple is legally incorrect. Temple seems to argue that CFS had to "accept" Temple's acceptance of the Tolling Agreement in order to create a binding contract. However, under Oklahoma law nothing after acceptance is required to maintain a valid contract.[18]

The argument that Oklahoma law required an agent of CFS to sign and deliver the Tolling Agreement to Temple is equally without merit. Under Oklahoma law, courts "must give effect to the mutual intent of the parties as expressed in the language of the contract, so long as it is unambiguous on its face and there exists no 'fraud, accident, or pure absurdity' affecting the agreement."[19] If the language is unambiguous, the plain meaning is the "only legitimate evidence of what the parties intended[.]"[20] The relevant portion of the Tolling Agreement, relied upon by Temple, states: "This Agreement may be executed in identical counterparts with facsimile signatures having the same force and effect as original signatures."[21] The Court, after review, finds the Tolling Agreement, including the provision relied upon by Temple, is not "reasonably susceptible" to more than one meaning. Nothing in the Tolling Agreement required that an agent from CFS sign and deliver a copy of the Tolling Agreement in order to make it binding between the parties.

The United States Court of Appeals for the Tenth Circuit has ruled that, under Oklahoma law, "a writing can be binding if only signed by one party and accepted by the other."[22] In *Oklahoma Radio Associ-*

---

**18.** Temple also cites an Oklahoma statute requiring that "[a] contract in writing takes effect upon its delivery to the party in whose favor it is made, or to his agent" to support his position. *See* OKLA. STAT. ANN. tit. 15, § 138 (West 1996). This statute unremarkably requires that the party accepting a contract in writing must deliver it to the offeror before it becomes effective. In this case, Temple, after accepting the Tolling Agreement by signing it, delivered it to CFS via facsimile. The statute has been complied with.

**19.** *Gamble, Simmons & Co. v. Kerr–McGee Corp.,* 175 F.3d 762, 767 (10th Cir.1999) (citing Okla. Stat. tit. 15, § 154).

**20.** *Id.* (citing *Mercury Inv. Co. v. F.W. Woolworth Co.,* 706 P.2d 523, 529 (Okla.1985)).

**21.** *Pl.'s Ex. 11.*

**22.** *Okla. Radio Assoc. v. FDIC,* 987 F.2d 685, 692 (10th Cir.1993) (citing *First Nat'l Bank of Berwyn v. Raymer,* 180 Okla. 529, 71 P.2d 485, 487 (1937)). In *Raymer,* the Oklahoma Supreme Court adopted the rule of *Orbeck v. Alfei,* 276 S.W. 947 (Tex.Civ.App.—Waco 1925) a Texas case that held " '[w]hen a contract between two parties is reduced to writing and signed by one of them and accepted by the other, it becomes in contemplation of the law, a written contract, and will be treated so by the courts of this state.' " *Raymer,*

*ates*, a borrower ("ORA") of Citizens Bank requested that its debt to the bank be renewed for a five year term, instead of the customary one year period. After receiving the request, John Osborne, vice president of Citizens Bank, sent a letter, signed by him, agreeing to renew the note at maturity for a five year period. Shortly thereafter, the FDIC was appointed to act as receiver for Citizens Bank. In the course of its duties, the FDIC demanded that ORA pay the loan at the one year maturity date specified in the original note. ORA maintained that the letter from Osborne modified its loan agreements with Citizens Bank, and that the loans were not currently due. The central issue in the case was whether the letter sent by Osborne to ORA constituted a valid contract modifying the terms of the loan agreement. The FDIC contended that the letter was not a valid contract because it was not signed by an agent of ORA. The trial court granted summary judgment in favor of the FDIC and ORA appealed. The Tenth Circuit agreed with ORA and reversed the grant of summary judgment. It determined that ORA's signature (or lack thereof) was irrelevant to the issue of whether a contract had been formed because the letter was sent to ORA and ORA had accepted the benefit of the contract by executing the notes. Accordingly, the court held that the "argument of no countersignature is untenable."[23]

The principle set forth in *Oklahoma Radio Associates* is applicable to the facts at bar. CFS requested that Temple enter into a Tolling Agreement extending the

time in which potential claims could be brought against him. Temple accepted CFS's offer and memorialized his acceptance by signing the Tolling Agreement and sending it to CFS via facsimile. CFS in turn, received the document, and deferred its right to sue Temple regarding claims covered in the agreement. As with *Oklahoma Radio Associates*, the fact that Temple did not receive the signed copy from CFS is irrelevant. The parties through their actions formed a contract on November 29, 2000. This conclusion is further bolstered by the fact that counsel for CFS, on November 30, 2000, announced in open court that CFS and Temple had entered into the Tolling Agreement, and that CFS would not be pursuing any claims against Temple at that time. Considering this, there is no basis to conclude that CFS's failure to deliver a signed copy of the Tolling Agreement to Temple kept the parties from entering into a binding contract.

*Nature of the Limitation Imposed by § 546*

Temple argues that even if the Tolling Agreement is a valid contract, it is ineffective because § 546 is a statute of repose which may not be waived by an agreement between the parties. As explained by the United States Supreme Court, a statute of repose "protect[s] defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise."[24] Plaintiffs contend that

---

23. *Id.* at 692, 71 P.2d 485.

24. *United States v. Kubrick*, 444 U.S. 111, 117, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) (citations and quotations omitted); *see also Waller v. Pittsburgh Corning Corp.*, 946 F.2d 1514, 1515 n. 1 (10th Cir.1991) ("Statutes of limitation bar a claim after a time period begins to

---

71 P.2d at 487–88. Considering the importance of the term "acceptance" to this case, it is important to point out that these cases, when referring to "acceptance" do not mean it in the sense used to accept a contract; rather, they use the term "acceptance" in a way that is synonymous with reliance or actions that indicate a contract exists.

§ 546 is a statute of limitations. A statute of limitations "represent[s] a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that the right to be free from stale claims in time comes to prevail over the right to prosecute them."[25] While statutes of limitation are subject to tolling and waiver, statutes of repose act as an absolute bar on a plaintiff's ability to bring suit after a certain period of time and are not tolled for any reason.[26]

Courts that have looked at the issue are split regarding whether § 546(a) is a statute of limitations or a statute of repose. The United States Court of Appeals for the Tenth Circuit has not directly answered the question. However, one decision of our circuit merits discussion. In the case of *In re M & L Business Machine Co.*, the Tenth Circuit held that the two year period contained in § 546(a) "is subject to the doctrine of equitable tolling."[27] *M & L Business Machine* presented the issue of whether the two year period recommenced upon the appointment of another trustee later on in the proceedings. The Tenth Circuit concluded that once a trustee was appointed in a case, the two year time bar is set in motion and cannot be reset by the appointment of a subsequent trustee. In reaching this conclusion, the Court looked at the plain language of § 546(a), concluded that it acted like a statute of limitations, and stated that the policy surrounding statute of limitations mandated the holding.[28] This conclusion is contrary to the contention that § 546(a) is a statute of repose.[29] As another circuit has observed: "the determination that a given statute of limitations can be equitably tolled is fundamentally inconsistent with the view that the statute divests a

run when the cause of action accrues. Statutes of repose ... bar a claim after a period that is triggered by an arbitrary event unrelated to the accrual of the cause of action.").

**25.** *Id.* (citations and quotations omitted).

**26.** *See First United Methodist Church of Hyattsville v. United States Gypsum Co.*, 882 F.2d 862, 865–66 (4th Cir.1989); *see also In re Sharps Run Associates, L.P.*, 157 B.R. 766, 782–83 (D.N.J.1993).

**27.** *In re M & L Business Machine Co.*, 75 F.3d 586, 591 (10th Cir.1996).

**28.** *Id.* at 590–91 ("Our interpretation gives full effect to the policies embodied in § 546(a). The purposes of statutes of limitation are to ensure finality and to prevent the assertion of stale claims." (citations omitted)).

**29.** It can be argued that in *Starzynski, supra*, 72 F.3d 816, the Tenth Circuit suggested that § 546(a) is jurisdictional in nature, or a statute of repose. At issue in *Starzynski* was whether the two year statute of limitations of § 546(a) began anew upon an individual's appointment as an estate representative in a Chapter 11 reorganization case. The Tenth Circuit, in deciding the issue, also touched on other issues involving extending the time bar of § 546(a). Early in the decision, the court, listing factors that mitigated its conclusion that an estate representative had only two years from the commencement of the case or the subsequent appointment of a trustee, included the fact that "parties could seek an order extending the deadline for filing" with the bankruptcy court to avoid the time bar of § 546(a). *Id.* at 821. Later in the opinion, the court, responding to the contention that the plan somehow extended the two year statute of limitations, ruled that the plain language of the plan failed to expressly provide for any such time frame, and then stated "it is questionable whether the plan could extend the period during which preference actions could be filed, which is provided by statute." *Id.* at 522 (citing cases both supporting and opposing the conclusion that § 546(a) is a statute of repose). Ultimately, it mattered not whether § 546(a) was considered a statute of limitation or a statute of repose. The decision of the Court; namely, that the time period did not begin to run anew upon the appointment of the "estate representative," would be the same in either event. As such, any ruling on the nature of § 546(a) in *Starzynski* is *dicta*.

court of subject matter jurisdiction over certain actions once the limitations period has elapsed." [30]

The United States Court of Appeals for the Tenth Circuit has never addressed the issue of whether the statute of limitations contained in § 546(a) may be voluntarily waived by the parties. The logic of *M & L Business Machine* places the Tenth Circuit with those courts that have determined that § 546(a) may be waived by the parties. The leading case, *In re Pugh*, is consistent with the analysis employed by *M & L Business Machine*. In *Pugh*, the United States Court of Appeals for the Eleventh Circuit had to determine whether or not § 546(a) was waived by failing to assert it as an affirmative defense. In making its analysis, the Court first looked at the plain language of § 546(a) and used the test created by the United States Supreme Court to determine whether a federal statute is a statute of limitations. [31] According to the test, " 'most statutes of limitation provide either that all actions . . . shall be brought within or no action . . . shall be brought more than so many years after the cause thereof accrued.' " [32]

The Eleventh Circuit concluded that the language of § 546(a) was "linguistically similar to typical statute of limitations noted by the [Supreme] Court." [33]

The Eleventh Circuit also looked at the legislative history of § 546(a) and concluded that it too supported the conclusion that the section was a statute of limitations and not a statute of repose. [34] Finally, the court looked at those cases that had reached the opposite conclusion and found them to be of little merit. [35] Based on this analysis, the Eleventh Circuit held that § 546(a) may be waived by a defendant's failure to assert the time bar as an affirmative defense. The Court finds the analysis in *Pugh* to be persuasive. It follows *a fortiori* from the reasoning of *Pugh* that parties may waive or extend § 546(a) through an agreement between the parties. [36] It is also noteworthy that the United States Supreme Court has recently stated:

It is hornbook law that limitations periods are customarily subject to equitable tolling unless tolling would be inconsistent with the text of the relevant statute. Congress must be presumed to draft

30. *Pugh, supra,* 158 F.3d at 537; *see also In re Williams,* 276 B.R. 394, 398 (Bankr.E.D.Pa. 2002).

31. When interpreting provisions of the Bankruptcy Code, courts must first look to the plain language of the statute. *United States v. Ron Pair Enter.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). The intentions of the drafters come into play, if at all, only if the literal application of the statute would produce a result inconsistent with such intentions. *Id.* at 242, 109 S.Ct. 1026.

32. *Pugh, supra,* 158 F.3d at 534 (quoting *Beach v. Ocwen Fed. Bank,* 523 U.S. 410, 416, 118 S.Ct. 1408, 140 L.Ed.2d 566 (1988)) (citations, quotations, and alterations omitted).

33. *Id.* Section 546(a) states in relevant part: "An action or proceeding under section 544, 545, 547, 548, or 553 of this title *may not be*

*commenced after* the earlier of . . . ." § 546(a) (emphasis added).

34. *Id.* at 537–38.

35. *Id.* at 534–36. The Eleventh Circuit, in its discussion of contrary law, also discusses *Martin v. First Nat'l Bank of Louisville (In re Butcher),* 829 F.2d 596 (6th Cir.1987), the principal case relied upon by Temple. Not only does *Pugh* effectively diminish the significance of the case, it also points out that *Butcher* has been overruled by *Bartlik v. United States Dept. of Labor,* 62 F.3d 163 (6th Cir.1995) (en banc). *Id.* at 536 n. 9.

36. *Accord Brandt v. Gelardi (In re Shape Inc.),* 138 B.R. 334, 337 (Bankr.D.Me.1992) (section 546(a) "prescribes a statute of limitations which, like any other, may be extended by agreement of the parties.").

limitations periods in light of this background principle. That is doubly true when it is enacting limitations periods to be applied by bankruptcy courts, which are courts of equity and apply the principles and rules of equity jurisprudence.[37]

Read with existing law that statutes of repose are never subject to equitable tolling,[38] the Supreme Court's language could be read to suggest that all limitations periods under the Bankruptcy Code are to be presumed statutes of limitations (that can be waived) unless clearly indicated otherwise by Congress.

In any event, the analysis of the relevant law in this area leads the Court to the inescapable conclusion that § 546(a) is a statute of limitations and not a statute of repose that may be waived or extended by an agreement between the parties. Accordingly, the Court holds that the Tolling Agreement signed by Temple, along with the subsequent modifications, validly extended the limitations period to bring fraudulent transfers until May 30, 2002.

*Relation Back of the First Amended Complaint*

▮ Temple argues that even if the original complaint is deemed to have been timely filed as a result of the Tolling Agreement, the First Amended Complaint filed on July 24, 2002, does not properly relate back to the original complaint and is therefore time barred. Temple bases his argument on the fact that the original complaint made no mention of the Tolling Agreement. In other words, Temple argues that the failure of Plaintiffs to mention the Tolling Agreement in their original complaint bars them from ever enforcing their rights under the Tolling Agreement. The argument is as convoluted as it is unpersuasive.

▮ This Court has recently issued a detailed decision regarding the relation back of pleadings under Federal Rule of Civil Procedure 15, made applicable to adversary proceedings under Federal Rule of Bankruptcy Procedure 7015.[39] The following portion of that opinion is helpful here:

> The United States District Court for the District of Kansas has stated that:
>
>> An amended complaint will not relate back if it asserts new or distinct conduct, transactions, or occurrences as the basis for relief. The purpose behind Rule 15(c)(2) is accomplished if the original complaint gives the defendant fair notice that litigation is arising out of a specific factual situation. If the original complaint fairly discloses the general fact situation out of which the new claims arise, a defendant is not deprived of the protection of the statute of limitations.
>
> *Landis v. Correctional Corp. of America–Leavenworth,* 1999 WL 459338, at *3 (D.Kan.1999) (internal quotes and citations omitted). An amendment that adds or changes the statutory provision relied on, but relies on the same facts to support the claim, will relate back. *Denver and Rio Grande Western R.R. v. Clint,* 235 F.2d 445, 447 (10th Cir.1956).
>
> The courts "somewhat liberally" apply the relation back provisions of Rule

---

**37.** *Young v. United States,* 535 U.S. 43, 49–50, 122 S.Ct. 1036, 152 L.Ed.2d 79 (2002) (citations and quotations omitted) (finding that § 507(a)(8)(A)(i) of the Bankruptcy Code, which proscribes a "three year look back period" for the discharge of certain tax liabilities, to be a statute of limitations).

**38.** *See supra* nn. 26, 30 and accompanying text.

**39.** *Malloy v. Mulkey Tire, Inc. (In re Universal Factoring Co., Inc.),* 279 B.R. 297 (Bankr. N.D.Okla.2002).

15. *Powers v. Graff,* 148 F.3d 1223, 1225–26 (11th Cir.1998). As a general rule, amendments will relate back if they amplify the facts previously alleged, correct a technical defect in the prior complaint, assert a new legal theory of relief, or add another claim arising out of the same facts. *See F.D.I.C. v. Conner,* 20 F.3d 1376, 1385–86 (5th Cir.1994); *Marsh,* 774 F.Supp. at 612. "[F]or relation back to apply, there is no additional requirement that the claim be based on an identical theory of recovery." *Bularz v. Prudential Ins. Co. of America,* 93 F.3d 372, 379 (7th Cir.1996) (citations omitted). On the other hand, amendments generally will not relate back if they interject entirely different facts, conduct, transactions or occurrences. *F.D.I.C. v. Conner,* 20 F.3d at 1385–86. It is a matter committed to the district court's sound discretion to decide whether a new claim arises out of the same transaction or occurrence. *Wilson v. Fairchild Republic Co., Inc.,* 143 F.3d 733, 738 (2nd Cir.1998).

*Kidwell v. Board of County Comm'rs of Shawnee County,* 40 F.Supp.2d 1201, 1217 (D.Kan.1998), *aff'd,* 189 F.3d 478, 1999 WL 500215 (10th Cir.1999), *cert. denied,* 528 U.S. 1064, 120 S.Ct. 620, 145 L.Ed.2d 514 (1999).[40]

As noted, the rules regarding relation back of pleadings are to be liberally construed. Temple asks the Court to do the opposite. In the present case, the only additional fact alleged of which Temple complains is the existence of the Tolling Agreement. Neither the existence of the Tolling Agreement or the fact that Plaintiffs were relying upon it to bring their action can come as any sort of a surprise to Temple. Plaintiffs were not compelled to initially plead the existence of the Tolling Agreement; indeed, if Temple had not disputed its validity, the action would have proceeded on without its mention. The Court finds that the First Amended Complaint relates back to the original complaint, and that it may proceed.

### Conclusion

The Court concludes that Temple voluntarily and willingly entered into the Tolling Agreement and that the Tolling Agreement represents a binding and enforceable contract. The Court further concludes that § 546(a) operates as a statute of limitations which has been contractually extended by the parties. Accordingly, Defendant's Motion to Dismiss or Alternative Motion for Summary Judgment on Statute of Limitations With Brief is denied. Plaintiffs' Response to Defendant's Motion to Dismiss or, Alternative Motion for Summary Judgment on Statute of Limitations is granted. The adversary proceeding shall not be dismissed at this stage and will proceed in the normal course of the court's business. A separate judgment consistent with this Memorandum Opinion is entered concurrently herewith.

### JUDGMENT

THIS MATTER comes before the Court pursuant to the Motion to Dismiss or Alternative Motion for Summary Judgment on Statute of Limitations With Brief, filed by Mike C. Temple, Defendant herein, and the Response to Defendant's Motion to Dismiss or, Alternative Motion for Summary Judgment on Statute of Limitations filed by Commercial Financial Services, Inc. and Bradley D. Sharp, Trustee of the CFS Liquidating Trust, Plaintiffs herein and the various replies and responses to each. The issues having been duly consid-

---

**40.** *Id.* at 303–04.

ered, and a decision having been duly rendered, for the reasons set forth in the Memorandum Opinion filed concurrently herewith,

IT IS HEREBY ORDERED that the Motion to Dismiss or Alternative Motion for Summary Judgment on Statute of Limitations With Brief, filed by Mike C. Temple, Defendant herein, be, and the same hereby is denied.

IT IS FURTHER ORDERED that to the extent the Response to Defendant's Motion to Dismiss or, Alternative Motion for Summary Judgment on Statute of Limitations filed by Commercial Financial Services, Inc. and Bradley D. Sharp, Trustee of the CFS Liquidating Trust, Plaintiffs herein, seeks summary judgment on the issue of the validity of the Tolling Agreement (as that term is defined in the Memorandum Opinion), the same is hereby granted.

IT IS FURTHER ORDERED that the Tolling Agreement (as that term is defined in the Memorandum Opinion) represents a valid and binding contractual agreement between Commercial Financial Services, Inc. and Mike C. Temple.

IT IS FURTHER ORDERED that this adversary proceeding is not subject to the defense that it was untimely filed under the provisions of 11 U.S.C.A. § 546(a) or any other statute of limitation or repose.

IT IS FURTHER ORDERED that the First Amended Complaint filed in this adversary proceeding on July 24, 2002, relates back to the filing of the original complaint for purposes of Federal Rule of Bankruptcy Procedure 7015.